

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

TRACY PETROCELLI,                    )
                                     )
          Petitioner,                )         3:94-cv-0459-RCJ-VPC
                                     )
vs.                                  )
                                     )         ORDER
E.K. McDANIEL, et al.,               )
                                     )
          Respondents.               )
                                     )
_____)

Introduction and Background

        This action is a petition for writ of habeas corpus by Tracy Petrocelli, a Nevada prisoner under sentence of death. It is before the court on Petrocelli's Motion to Stay Proceedings and Hold Litigation in Abeyance (docket #203), filed April 21, 2010. In that motion, Petrocelli argues that this action should be stayed so that he may return once again to state court to exhaust his unexhausted claims. The court will deny the motion, will require Petrocelli to abandon his unexhausted claims or face dismissal of his entire petition, and will move this case toward resolution of Petrocelli's remaining claims, on their merits.

        In its January 4, 1985 decision on Petrocelli's direct appeal, the Nevada Supreme Court described, as follows, the facts of the case as revealed by the evidence at trial:

                Tracy Petrocelli's journey to Reno began in Washington where he killed his fiancee. He fled Washington and apparently drove to Colorado in a Corvette, to Oklahoma in a van and to Reno in a Datsun which he stole while "test driving" the

vehicle. Upon arriving in Reno, Petrocelli decided he needed a four-wheel drive truck to get around in the snow. The next day, his search for a vehicle ultimately led to a local used car dealer. The dealer, James Wilson, acceded to Petrocelli's request for a test drive of a Volkswagen (VW) pickup, and the two drove off with the dealer at the wheel. At about 1:30 p.m., a Dodge dealer saw them driving north on Kietzke Lane. Approximately forty-five minutes later, a Reno patrolman saw one person driving a truck matching the description of the VW speeding toward Pyramid Lake.

That evening, Petrocelli was picked up on the Pyramid Highway and given a ride to Sutcliffe. He told the driver that his motorcycle had broken down. In Sutcliffe, Petrocelli got a ride to Sparks with a local game warden. Petrocelli then took a cab to Reno and apparently paid his fare from a two-inch roll of bills.

The next day, the game warden and his partner looked for Petrocelli's motorcycle. Instead, they found the VW truck with bloodstains and bullet holes on the passenger side. The car dealer's body was found later that day in a crevice, covered with rocks, sagebrush and shrubbery. His back pockets were turned slightly inside out and empty; his wallet was missing. The victim, who usually carried large amounts of cash with him, had been shot three times with a .22 caliber weapon. One shot was to the neck; another shot was to the heart. The third shot was to the back of the head from a distance of two to three inches.

In the abandoned truck, .22 caliber bullet casings were found. When he was arrested, Petrocelli was carrying a .22 caliber semi-automatic pistol which he testified he always carried loaded and ready to fire. Ballistics tests on the casings found in the abandoned VW revealed that they had been fired from Petrocelli's pistol. Tests on the bullet found in Wilson's chest and a test bullet fired from Petrocelli's pistol also revealed similar markings.

At trial, Petrocelli provided his own account of the killing. After driving off the car lot, the car dealer stopped at a gas station and filled the truck. From the station, Petrocelli drove the truck. He and Wilson proceeded to argue about the price of the truck. Petrocelli laid $3,500.00 on the dashboard and offered a total of $5,000.00 cash. The car dealer was insulted and called him a "punk." Later, on the way back, Wilson twice grabbed for the steering wheel. Petrocelli then pulled out his pistol and said: "Now who is the punk." The victim laughed and said he had a gun also, although Petrocelli never saw one. The car dealer tried to take the pistol from Petrocelli as he continued to drive. As they struggled, the gun went off two or three times. Petrocelli testified, "I knew it was shooting, and I was just trying to pull it away from him.... It was an accident. I didn't do anything. I just tried to keep him from getting the gun." Petrocelli drove to a nearby doctor's office, went up to the door, but did not go in because he "didn't know how to tell him [doctor] there was someone hurt, shot in the car." Thereafter, Petrocelli went to a bowling alley and called the hospital, but "didn't know what to say." He then returned to the truck, drove to Pyramid Lake and hid the car dealer's body under some rocks. Petrocelli began walking after his truck bogged down, but then returned to the vehicle to retrieve his gloves and the gun. He also picked up the car dealer's wallet, took his money, threw the business and credit cards into the wind, and discarded the wallet. Petrocelli then walked to the highway where he obtained rides back to Reno.

2

1         Petrocelli was convicted by a jury of first degree murder and robbery with the
2    use of a deadly weapon. The sentence for the murder conviction was set at death.

3    *Petrocelli v. State*, 101 Nev. 46, 48-49, 692 P.2d 503, 505-06 (1985).

4         On September 8, 1982, the trial court imposed the sentence of death on the murder conviction,

5    and a sentence of imprisonment for 15 years on the robbery conviction, plus an additional 15 years in

6    prison for the use of a deadly weapon. Exhibit 5.[1]

7         Petrocelli appealed. *See* Exhibit Z (opening brief); Exhibit AA (answering brief); Exhibit BB

8    (reply brief). The Nevada Supreme Court affirmed on January 4, 1985. *Petrocelli v. State*, 101 Nev.

9    46, 692 P.2d 503 (1985); *see also* Exhibit 9, Exhibit FF.

10        On August 12, 1985, Petrocelli filed a petition for post-conviction relief in the state district court.

11   Exhibit H. On March 20, 1985, the state district court held an evidentiary hearing. Exhibit Y

12   (transcript). On December 31, 1986, the state district court denied the petition. Exhibit I. Petrocelli

13   appealed. Exhibit JJ (opening brief); Exhibit KK (answering brief); Exhibit LL (reply brief). The

14   Nevada Supreme Court dismissed the appeal on June 23, 1988. Exhibit NN.[2]

15        On August 24, 1988, Petrocelli filed a petition for writ of habeas corpus in this court, initiating

16   the case of *Petrocelli v. Whitley*, CV-N-88-0446-HDM.[3] Exhibit 16. Counsel was appointed to

17   represent Petrocelli. *See* Exhibits 2 and 5 to Respondents' February 7, 1997 Filing.[4] On May 31, 1989,

18

19   —————————————————————

20   [1] Unless otherwise noted, the exhibits identified by numbers in this order were filed by
Petrocelli and are located in the record at docket #163 through #169. Unless otherwise noted, the

21   exhibits identified by letters in this order were filed by respondents and are located in the record at
docket #36, and docket #70 through #76.

22   [2] The court refers to this state-court proceeding as Petrocelli's "first state habeas action."

23   [3] The court here uses its older system of file numbers to identify Petrocelli's first federal habeas

24   action. Using the court's current file number system, that case would be identified as *Petrocelli v. Whitley*, 3:88-cv-0446-HDM.

25   [4] In this action, on February 7, 1997, respondents filed a document entitled: "Response to

26   Petitioner's Explanation Why Grounds 26, 27, 28, 6 and 9 Should Not Be Barred As An Abuse of the
Writ" (docket #55) ("Respondents' February 7, 1997 Filing"). Attached to that document are 11
exhibits, which are copies of documents filed in *Petrocelli v. Whitley*, CV-N-88-0446-HDM.

3

1  upon a motion by Petrocelli, the court ordered his first federal habeas action, case number CV-N-88-

2  0446-HDM, dismissed without prejudice, to allow him to return to further exhaust his claims in state

3  court. *See* Exhibits 6, 7, 8, 9, 10, and 11 to Respondents' February 7, 1997 Filing.

4          On March 10, 1989, Petrocelli filed a petition for writ of habeas corpus in state district court.

5  Exhibit PP. The state district court dismissed that petition on January 22, 1992. Exhibit UU. Petrocelli

6  appealed. *See* Exhibit WW (opening brief); Exhibit XX (answering brief); Exhibit YY (reply brief).

7  The Nevada Supreme Court dismissed the appeal on December 22, 1993. Exhibit ZZ.[5]

8          Petrocelli then initiated this, his second, federal habeas corpus action, on July 13, 1994. He filed

9  the original habeas petition in the action on October 28, 1994 (docket #4). Counsel was appointed for

10  Petrocelli (docket #7, #8, #24). On February 9, 1996, Petrocelli filed a first amended habeas petition

11  (docket #28).

12          Respondents then filed a motion to dismiss, arguing that certain claims in the first amended

13  petition were unexhausted, procedurally barred, and constituted an abuse of the writ (docket #36). The

14  court granted that motion on abuse of the writ grounds, and dismissed five claims from the first amended

15  petition (docket #46, #56).

16          In an order entered September 30, 1997, this court denied the first amended habeas petition,

17  ruling that certain claims in it were an abuse of the writ and that certain claims were procedurally

18  defaulted, and denying the remainder of the claims on their merits (docket #78). Judgment was entered

19  (docket #79).

20          Petrocelli appealed (docket #80). In a published opinion filed on March 8, 2001, the court of

21  appeals affirmed in part, reversed in part, and remanded. *Petrocelli v. Angelone*, 248 F.3d 877 (9th

22  Cir.2001) (copy in record at docket #88). The court of appeals affirmed the district court's denial, on

23  the merits, of certain of Petrocelli's claims; the court reversed the district court's determinations that

24  certain claims were an abuse of the writ and that certain claims were procedurally defaulted. *Id.* The

25  court of appeals remanded for further proceedings. *Id.*

26  ───────────────

         [5] The court refers to this state-court proceeding as Petrocelli's "second state habeas action."

1       After receiving the remand, the district court heard from the parties regarding the status of the

2   remanded claims, with respect to the exhaustion of those claims in state court (*see* docket #92, #93, #94,

3   #97, #98, #99, #101). In an order entered February 7, 2003 (docket #100), the court ruled that the

4   remanded claims were "mixed," meaning that some of them had been exhausted in state court and some

5   had not. The court extended to Petrocelli the opportunity to amend his petition to remove the

6   unexhausted claims, and then, during a stay of this case, to return to state court to exhaust those claims.

7   Petrocelli then filed a second amended petition (docket #104), and then, to correct typographical errors,

8   a third amended petition (docket #108), purportedly including in it only claims exhausted in state court.

9   On May 28, 2003, the court ordered this action stayed pending Petrocelli's exhaustion of claims in state

10  court (docket #109).

11      On August 11, 2003, Petrocelli filed a petition for writ of habeas corpus in the state district court.

12  Exhibit 26. Petrocelli later filed a supplement to that petition. Exhibit 32. The state district court held

13  evidentiary hearings. Exhibits 29, 30, 31 (transcripts). The petition was dismissed by the state district

14  court on April 14, 2006. Exhibit 36. Petrocelli appealed. *See* Exhibit 38 (opening brief); Exhibit 39

15  (answering brief); Exhibit 40 (reply brief). The Nevada Supreme Court affirmed on July 26, 2007.

16  Exhibit 41.[6]

17      On November 16, 2007, upon a motion by Petrocelli, the stay of this action was lifted (docket

18  #147). On January 11, 2009, Petrocelli filed his fourth amended petition for writ of habeas corpus

19  (docket #162). The fourth amended petition includes 31 claims for habeas corpus relief, including

20  several with subparts.

21      On May 26, 2009, respondents filed a motion to dismiss, asserting that certain of Petrocelli's

22  claims have already been adjudicated; that certain of Petrocelli's claims are unexhausted in state court;

23  and that certain of Petrocelli's claims are procedurally barred. On March 23, 2010, the court granted

24  the motion to dismiss in part and denied it in part (docket #200). The court denied the motion to dismiss

25  with respect to Grounds 6(c), 6(d), 7(b), 7(f), 10, 12, and 13 of the fourth amended petition. The court

26  ─────────────────────────

    [6] The court refers to this state-court proceeding as Petrocelli's "third state habeas action."

5

dismissed Grounds 1, 2, 3, 4, 5, 6(b), 7(a), 7(c), 7(d), 8(a), and 8(c). The court ruled Grounds 7(e), 8(b), 9, 11, 14, 15(a), 15(b), 15(c), 15(d), 15(e), 16(a), 16(b), 16(c), 16(d), 16(e), 16(f), 16(g), 16(h), 16(i), 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31 to be unexhausted, and, with respect to those unexhausted claims, the court granted Petrocelli time to file a notice of abandonment of unexhausted claims, indicating his election to abandon the unexhausted claims and proceed with the litigation of his remaining exhausted claims, or, in the alternative, to file a motion for stay, requesting a stay of these proceedings to allow him to return to state court to exhaust the unexhausted claims. The court ordered that, if Petrocelli did not, within the time allowed, file a notice of abandonment of unexhausted claims, abandoning all of his unexhausted claims, or a motion for a stay to allow exhaustion of his unexhausted claims in state court, his fourth amended petition would be dismissed, in its entirety, pursuant to *Rose v. Lundy*, 455 U.S. 509 (1982).

Petrocelli then filed his motion for stay (docket #203), respondents filed their opposition to the motion (docket #212), and Petrocelli replied (docket #217).

*Rhines*

Under 28 U.S.C. § 2254(b)(1)(A), this federal court cannot grant a writ of habeas corpus unless "the applicant has exhausted the remedies available in the courts of the State." This exhaustion requirement is "grounded in principles of comity" as it gives states "the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991).

In *Rhines v. Weber*, 544 U.S. 269 (2005), the Supreme Court held that a district court may stay a mixed petition – a petition containing both exhausted and unexhausted claims – in "limited circumstances," so that a petitioner may present his unexhausted claims to the state courts without losing his right to federal habeas review to the one-year statute of limitations. *Rhines*, 544 U.S. at 273-75 (explaining how the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which imposed a one-year statute of limitations on the filing of federal petitions, affected the treatment of mixed petitions). In *Rhines*, the Court ruled that a district court may stay a mixed petition only if:

6

1  (1) the petitioner has "good cause" for his failure to exhaust his claims in state court; (2) the

2  unexhausted claims are potentially meritorious; and (3) there is no indication that the petitioner

3  intentionally engaged in dilatory litigation tactics. *Id.* at 278. "[A] *Rhines* stay must be assessed "in

4  light of the Supreme Court's instruction that the district court should only stay mixed petitions in

5  'limited circumstances.'" *Wooten v. Kirkland*, 540 F.3d 1019, 1024 (9th Cir.2008), citing *Rhines*, 544

6  U.S. at 273-75. Moreover, the court must keep in mind that AEDPA aims to encourage the finality of

7  sentences and to encourage petitioners to exhaust their claims in state court before seeking habeas relief

8  in federal court. *Rhines*, 544 U.S. at 276-77; *see also Wooten*, 540 F.3d at 1024.

9      For the reasons stated below with respect to each of Petrocelli's unexhausted claims, the court

10  will deny Petrocelli's request for a *Rhines* stay.

11  <u>Ground 7(e)</u>

12      In Ground 7(e), Petrocelli claims that his trial counsel was ineffective, at the penalty phase of

13  his trial, "for failing to object to instructions and final argument regarding the possibility of parole or

14  clemency." Fourth Amended Petition, p. 185; *see also id.* at pp. 185-86.

15      Petrocelli argues that there is good cause for his failure to exhaust this claim, because of

16  "supervening authority" and "change in law." Motion for Stay, pp. 4-7. Petrocelli argues that the court

17  should grant a stay to allow him to return to state court to present the claim in Ground 7(e), because the

18  Ninth Circuit, in 2008, decided *Sechrest v. Ignacio*, 549 F.3d 789 (9th Cir.2008), a case involving a

19  claim that a capital defendant's constitutional rights were violated by the prosecutor's argument that he

20  could receive clemency and parole if sentenced to death. Petrocelli appears to contend that he could not

21  have exhausted in state court the claim asserted in Ground 7(e) before *Sechrest* was decided. The court

22  finds this argument to be without merit.

23      The claim in Ground 7(e) is a claim of ineffective assistance of Petrocelli's trial counsel. To

24  establish an ineffective assistance of counsel claim, the petitioner must show: (1) the representation was

25  deficient, falling "below an objective standard of reasonableness"; and (2) the deficient performance

26  prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the first prong of

7

1   that analysis, the petitioner must show that "counsel made errors so serious that counsel was not

2   functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S.

3   at 687. "A convicted defendant making a claim of ineffective assistance must identify the acts or

4   omissions of counsel that are alleged not to have been the result of reasonable professional judgment."

5   *Id*. at 690. "A fair assessment of attorney performance requires that every effort be made to eliminate

6   the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and

7   to evaluate the conduct of counsel's performance at the time." *Id*. at 689. Ineffective assistance of

8   counsel in violation of the Sixth Amendment is representation that falls "below an objective standard

9   of reasonableness" in light of "prevailing professional norms" at the time of the representation. *Id*. at

10  688-89; *see also Bobby v. Van Hook*, --- U.S. ---, 130 S.Ct. 13, 16-17, 175 L.Ed.2d 255 (2009).

11      Therefore, because the *Strickland* analysis looks to the professional norms prevailing at the time

12  of the representation, the decision in *Sechrest*, more than 25 years after Petrocelli's trial, has no impact

13  on the question whether Petrocelli received ineffective assistance of counsel as a result of his attorney's

14  failure to object to jury instructions and argument regarding the possibility of parole or clemency.

15      Furthermore, it is plain from the record that the claim in Ground 7(e) could have been

16  articulated, and exhausted in state court, before *Sechrest* was decided. In fact, Petrocelli made a closely

17  related argument – the substantive claim, that his constitutional rights were violated by the argument

18  regarding the availability of clemency and parole – in his first amended petition in this federal habeas

19  action, well before *Sechrest* was decided. There appears, therefore, to be no reason why Petrocelli could

20  not have exhausted in state court, in one of his three state-court habeas petitions, the claim that his

21  counsel was ineffective for failing to object to jury instructions and argument regarding the possibility

22  of parole or clemency. The 2008 *Sechrest* decision does not constitute good cause for Petrocelli's

23  failure to exhaust the claim in Ground 7(e).

24      Ground 8(b)

25      In Ground 8(b), Petrocelli claims that his appellate counsel was ineffective "for failure to argue

26  that there was insufficient evidence to support the robbery conviction and robbery as the underlying

8

1   felony for the felony-murder rule, and robbery as an aggravating circumstance." Fourth Amended

2   Petition, p. 188; *see also id.* at pp. 188-89.

3          Regarding his failure to exhaust this claim in state court, Petrocelli argues that there is good

4   cause for his failure because the attorneys who litigated his three state-court habeas proceedings were

5   ineffective for failing to raise it. *See* Reply in Support of Motion for Stay, p. 25.

6          *Rhines* does not go into detail as to what constitutes "good cause" for a failure to exhaust; and,

7   the Ninth Circuit has provided no clear guidance beyond holding that the test is less stringent than an

8   "extraordinary circumstances" standard. *See Jackson v. Roe*, 425 F.3d 654, 661-62 (9th Cir.2005)

9   (citing *NLRB v. Zeno Table Co.*, 610 F.2d 567, 569 (9th Cir.1979)).

10          Some district courts have concluded that the standard is more generous than the showing needed

11   for "cause" to excuse a procedural default. *See, e.g., Rhines v. Weber*, 408 F.Supp.2d 844, 849

12   (D.S.D.2005) (applying the Supreme Court's mandate on remand). This view finds support in *Pace v.*

13   *DiGuglielmo*, 544 U.S. 408 (2005), where the Supreme Court acknowledged that a petitioner's

14   "reasonable confusion" about the timeliness of his federal petition would generally constitute good

15   cause for his failure to exhaust state remedies before filing his federal petition. *Pace*, 544 U.S. at 416-

16   17.

17          On the other hand, a request for a *Rhines* stay must be assessed "in light of the Supreme Court's

18   instruction that the district court should only stay mixed petitions in 'limited circumstances.'" *Wooten*

19   *v. Kirkland*, 540 F.3d 1019, 1024 (9th Cir.2008) (citing *Rhines*, 544 U.S. at 273-75). In *Wooten*, the

20   petitioner attempted to show good cause under *Rhines* "by stating that he was 'under the impression' that

21   his counsel included all of the issues raised before the California Court of Appeal in his petition before

22   the California Supreme Court." *Wooten*, 540 F.3d at 1024. Finding that justification inadequate, the

23   Ninth Circuit explained as follows:

24                  . . . To accept that a petitioner's "impression" that a claim had been included in
             an appellate brief constitutes "good cause" would render stay-and-obey orders routine.

25             Indeed, if the court was willing to stay mixed petitions based on a petitioner's lack of
             knowledge that a claim was not exhausted, virtually every habeas petitioner, at least

26             those represented by counsel, could argue that he *thought* his counsel had raised an

9

1 unexhausted claim and secure a stay. Such a scheme would run afoul of *Rhines* and its
2 instruction that district courts should only stay mixed petitions in "limited circumstances."

3 *Id.* (emphasis in original, citation omitted).

4    In *Riner v. Crawford*, 415 F.Supp.2d 1207 (D.Nev.2006), this court only required a petitioner

5 to show "that he was prevented from raising the claim, either by his own ignorance or confusion about

6 the law or the status of his case, or by circumstances over which he had little or no control, such as the

7 actions of counsel either in contravention of the petitioner's clearly expressed desire to raise the claim

8 or when petitioner had no knowledge of the claim's existence." *Riner*, 415 F.Supp. at 1211. The

9 decision in *Wooten*, however, undermines any reliance on *Riner*. Like the petitioner's claim in *Wooten*

10 that he was under the impression that counsel had raised unexhausted claims, Petrocelli's justification,

11 that his post-conviction counsel performed ineffectively in failing to raise the claim, is one that could

12 be raised in virtually every case. Acceptance of such a good-cause theory would conflict with the

13 Supreme Court's guidance, in *Rhines*, that mixed petitions should only be stayed in limited

14 circumstances, and it would run contrary to the goals of AEDPA.

15    The United States District Court for the Southern District of California, in a recent order,

16 rejected a claim of ineffective assistance of post-conviction counsel as good cause under *Rhines*, stating:

17    There appears to be a measure of agreement that some factor either external to
18 or outside the control of Petitioner may be sufficient to demonstrate good cause for
failure to exhaust claims in state court. As the Ninth Circuit has indicated that the
good cause standard does not require a showing as high as extraordinary
19 circumstances, and the Supreme Court has held that reasonable confusion over
timeliness may also provide a sufficient showing of good cause, this Court is
20 persuaded that a standard of "excusable neglect" is an appropriate and reasonable
standard to apply to an analysis of good cause under Rhines.

21
22    Here, Petitioner asserts that the failure to raise the unexhausted claims earlier
can be attributed to the fact that "state habeas counsel conducted a wide-ranging
investigation, raised an extensive array of claims, and may be faulted only in failing
23 to formulate and organize the claims in a manner that comports with the technical
requirements of section 2254 exhaustion." (Pet. Opp. and Mot. at 11.) Petitioner's
24 proffered reason does not constitute good cause for failing to exhaust Claim 14 in
state court. Under an application of the "excusable neglect" standard, "counsel's
25 oversight ... do[es] not constitute good cause" for failing to exhaust claims in state
court. [*Corjasso v. Ayers*, 2006 WL 618380 (E.D.Cal. March 9, 2006)] at *3.
26

10

1        The *Corjasso* court was careful to distinguish between "excusable neglect,"
2   which could constitute good cause, and simple negligence, reasoning that "[t]he point
    is whether some outside, uncontrollable event precluded the bringing of the [ ] issue."
3   *Id.* at *2. In that case, the district court was not persuaded that counsel's work load
    and oversight of the unexhausted claim failed to constitute good cause, reasoning that
4   "[i]f the court found these circumstances to justify the delay, then good cause could
    be found in virtually every case, which the Supreme Court clearly did not intend in
    Rhines." *Id.* at *3.

5
6        The situation presented here is analogous to that in *Corjasso*, as Petitioner's
    failure to raise the claim in state court was not the result of any external event outside
7   his control, but was due to deliberate decisions made by counsel in "formulating and
    organizing the claims" for presentation to the state supreme court. As such, "[s]imply
    saying that the issue was overlooked by counsel is not outside the control of
8   petitioner since he is held bound by the acts of his counsel." *Id.* at *2.

9        In sum, Petitioner is unable to demonstrate good cause for failing to exhaust
    Claim 14 in state court. Accordingly, the Court declines to stay the federal
10  proceedings and hold the mixed federal petition in abeyance under *Rhines v. Weber*.

11  *Hoyos v. Cullen*, 2011 WL 11425 (S.D.Cal.2011) at *9-10.

12       While this court might hesitate to place an "excusable neglect" label on the *Rhines* good cause

13  standard, this court agrees with the court in *Hoyos*, and the court in *Corjasso*, that a simple statement

14  that state post-conviction counsel was ineffective for overlooking the issue is not enough to show good

15  cause under *Rhines*, and that some factor either external to, or outside the control of, the petitioner and

16  his counsel is required.

17       In this court's view, under the circumstances in this case, to conclude that Petrocelli had good

18  cause for his failure to exhaust, based simply upon his conclusory and unsupported assertion of

19  ineffective assistance of counsel, without more, would conflict with the Supreme Court's instruction in

20  *Rhines* that mixed petitions should be stayed in only limited circumstances, and it would disregard and

21  undermine the goals of the AEDPA, to encourage the finality of sentences, and to encourage petitioners

22  to exhaust their claims in state court before filing in federal court. *See Rhines*, 544 U.S. at 273-77; *see*

23  *also Wooten*, 540 F.3d at 1024. This court finds that Petrocelli has not shown good-cause, under *Rhines*,

24  for his failure to previously exhaust, in state court, the claim in Ground 8(b).

25

26

Ground 9

In Ground 9, Petrocelli claims that he received ineffective assistance of counsel in his state post-conviction proceedings. Fourth Amended Petition, pp. 195-96. Ground 9, for the most part, sets forth only general and unspecified claims of attorney error. The only somewhat specific assertion of attorney error in Ground 9 is the claim that counsel failed to investigate and discover available mitigating evidence. *Id* at 195.

One of the showings that must be made, under *Rhines*, to establish that a stay is warranted, is that the unexhausted claim is "potentially meritorious." *Rhines*, 544 U.S. at 278. There is no federal constitutional right to counsel in state post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551 (1987); *Murray v. Giarratano*, 492 U.S. 1 (1989) (applying the rule to capital cases). Consequently, there is no viable claim of constitutionally ineffective assistance of counsel in state post proceedings. *See Wainwright v. Torna*, 455 U.S. 586 (1982) (where there is no constitutional right to counsel there can be no deprivation of effective assistance). In veiw of these well-established principles, Petrocelli has made no showing that the claim in Ground 9 has potential merit.

Ground 11

In Ground 11, Petrocelli claims that his constitutional rights were violated "because the statutorily-mandated definition of 'premeditation and deliberation' given to his jury deprived him of due process and equal protection." Fourth Amended Petition, p. 200; *see also id.* at pp. 200-19. Petrocelli argues that there is good cause for his failure to exhaust this claim, because of "intervening changes in the law." Motion for Stay, p. 10; *see also id.* at pp. 9-18. More specifically, Petrocelli argues that his claim in Ground 11 is based upon the Ninth Circuit Court of Appeals' decision in *Polk v. Sandoval*, 503 F.3d 903 (9th Cir.20007), and *Polk* was not decided until after his appeal in his third state habeas action. Petrocelli's argument is not compelling.

Petrocelli could have raised this claim in state court before *Polk* was decided. Petrocelli demonstrated this himself. In the state district court, in his third petition for writ of habeas corpus, filed August 11, 2003 – about four years before *Polk* was decided – Petrocelli made this claim. Exhibit 26,

1   pp. 21-25. Had Petrocelli asserted the claim on the appeal in that action, it would now be exhausted.

2   However, Petrocelli did not do that. The claim was abandoned and not asserted on appeal before the

3   Nevada Supreme Court. *See* Exhibit 38, pp. 18-20 (statement of issues presented on appeal in third state

4   habeas action). Petrocelli has provided no explanation – much less "good cause" – for his abandonment

5   of this claim on the appeal in his third state habeas action.

6       So, while the decision in *Polk* may have added some weight to Petrocelli's claim, Petrocelli's

7   ability to exhaust the claim was not dependent on the *Polk* decision, and Petrocelli has not shown good

8   cause for his failure to exhaust the claim.

9       Ground 14

10      In Ground 14, Petrocelli claims that his constitutional rights were violated "because the Nevada

11  capital punishment system operates in an arbitrary and capricious manner." Fourth Amended Petition,

12  p. 252; *see also id.* at pp. 252-55.

13      With respect to this claim, Petrocelli appears to argue that a stay should be granted because "[t]o

14  Petitioner's counsel's knowledge, this issue has not been previously ruled on by the Nevada Supreme

15  Court, despite the obvious deficiencies of the state's death penalty system." Motion for Stay, p. 18.

16  This, however, is not a showing of good cause for Petrocelli's failure to exhaust this claim. *See Rhines*,

17  544 U.S. at 278. In fact, if Petrocelli had not abandoned this claim on the appeal in his third state habeas

18  action, it is possible that the Nevada Supreme Court might have ruled on this claim. Petrocelli raised

19  this claim in his state habeas petition, in the state district court, in his third state habeas action, but he

20  did not assert the claim in his appeal. *See* Exhibit 26, pp. 30-33; Exhibit 38, pp. 18-20. Petrocelli offers

21  no explanation for the abandonment of the claim on the appeal in his third state habeas action, and he

22  has, therefore, failed to show good cause for his failure to exhaust the claim.

23      Grounds 15(a), 15(b), 15(c), 15(d), 15(e)

24      In Ground 15, Petrocelli claims that his constitutional rights were violated "due to the substantial

25  and injurious effect of a consistent pattern of prosecutorial misconduct and overreaching which distorted

26  the fact finding process and rendered both the trial and sentencing hearing fundamentally unfair."

13

1   Fourth Amended Petition, p. 256; *see also id.* at pp. 256-62.  Ground 15 includes five subparts,

2   designated Grounds 15(a), 15(b), 15(c), 15(d), and 15(e). *See id.* at 256-62. In Ground 15(a), Petrocelli

3   claims that the prosecution committed misconduct "by giving inadequate notice of intent to seek the

4   death penalty." *Id.* at 258; *see also id.* at pp. 258-60.  In Ground 15(b), Petrocelli claims that the

5   prosecution "improperly disparaged Mr. Petrocelli by using pejorative terminology." *Id.* at p. 260; *see*

6   *also id.* at pp. 260-61.  In Ground 15(c), Petrocelli claims that the prosecution "improperly instructed

7   the jurors to send a message to the community." *Id.* at p. 261; *see also id.* at pp. 261-62.  In Ground

8   15(d), Petrocelli claims that the prosecution committed misconduct "in failing to turn over the letter

9   from Dr. Gerow to the prosecutor." *Id.* at p. 262.  In Ground 15(e), Petrocelli claims that "[t]rial,

10  appellate and post-conviction counsel were ineffective for failing to challenge the extensive

11  prosecutorial misconduct which occurred in Mr. Petrocelli's trial." *Id.* at p. 262.

12          With respect to all of his Ground 15 claims, Petrocelli argues that there is good cause for his

13  failure to exhaust because of ineffective assistance of his counsel, in failing to assert these claims on his

14  direct appeal and in his three state habeas actions. *See* Motion for Stay, p. 19.

15          This court finds that Petrocelli has not made a showing of good cause for his failure to exhaust

16  the claims asserted in Grounds 15(a), 15(b), 15(c), 15(d), and 15(e). *See* discussion of Ground 8(b),

17  *supra.*

18          Grounds 16(a), 16(b), 16(c), 16(d), 16(e), 16(f), 16(g), 16(h), 16(i)

19          In Ground 16, Petrocelli claims that his constitutional rights were violated "due to trial court

20  errors at voir dire and the failure of counsel to object to the jury selection process." Fourth Amended

21  Petition, p. 263; *see also id.* at pp. 263-83.  Ground 16 includes nine somewhat overlapping subparts,

22  which are designated Grounds 16(a), 16(b), 16(c), 16(d), 16(e), 16(f), 16(g), 16(h), and 16(i).  *See id.*

23  at 256-62. In Ground 16(a), Petrocelli claims that "[t]he trial court improperly death-qualified the jury,

24  failed to life-qualify the jury, and prevented the defense from individually questioning potential jurors

25  concerning their views on the death penalty." *Id.* at 266; *see also id.* at 266-68.  In Ground 16(b),

26  Petrocelli claims that "[t]he trial court failed to adequately inquire as to bias." *Id.* at 268; *see also id.*

14

1   at 268-70.  In Ground 16(c), Petrocelli claims that "[t]he trial court failed to life-qualify prospective

2   jurors."  *Id.* at 270; *see also id.* at 270-73.  In Ground 16(d), Petrocelli claims that "[t]he trial court

3   improperly imposed overly-restrictive voir dire standards."  *Id.* at 273; *see also id.* at 273-77.  In Ground

4   16(e), Petrocelli claims that "[d]efense counsel were ineffective for failing to rehabilitate death reticent

5   jurors."  *Id.* at 277; *see also id.* at 277-78.  In Ground 16(f), Petrocelli claims that "[t]he trial court erred

6   by failing to provide individual sequestered voir dire."  *Id.* at 278; *see also id.* at 278-79.  In Ground

7   16(g), Petrocelli claims that "[t]he trial court ... erroneously failed to closely examine the beliefs of the

8   prospective jurors and examined them in a hurried, incomplete and inconsistent manner."  *Id.* at 279-80.

9   In Ground 16(h), Petrocelli claims that "[t]rial counsel failed to provide constitutionally effective

10  representation during the entire jury selection process."  *Id.* at 281; *see also id.* at 281-82.  In Ground

11  16(i), Petrocelli claims that "[a]ppellate and post-conviction counsel were ineffective in failing to raise

12  this claim."  *Id.* at 282; *see also id.* at 282-83.

13           Petrocelli argues that there is good cause for his failure to exhaust all of these claims because

14  of "subsequent legal developments that were not in existence at the time of Mr. Petrocelli's appeal."

15  Motion for Stay, p. 19.  The only "subsequent legal development" cited by Petrocelli, however, is the

16  United States Supreme Court's decision in *Morgan v. Illinois*, 504 U.S. 719 (1992), issued June 15,

17  1992.  *See id.*  The *Morgan* decision predated by more than a decade Petrocelli's third state-court

18  petition for writ of habeas corpus.  The timing of the decision in *Morgan* does not explain why the

19  claims in Ground 16 were not raised in Petrocelli's third state habeas action.

20           Petrocelli also argues that his appellate counsel was ineffective for failing to raise this issue on

21  his appeal, apparently referring to his direct appeal to the Nevada Supreme Court.  *See* Motion for Stay,

22  pp. 19-20.  Here again, however, the court does not accept such a claim of ineffective assistance of

23  counsel, without more, as satisfaction of the good-cause requirement imposed by *Rhines*.  *See* discussion

24  of Ground 8(b), *supra*.  And, moreover, this ineffective assistance of appellate counsel does not appear

25  to speak to Petrocelli's failure to raise these claims in his third state habeas action.

26           Petrocelli has not shown good cause for his failure to exhaust the claims set forth in Ground 16.

Ground 17

In Ground 17, Petrocelli claims that his constitutional rights were violated "by the introduction of inaccurate, prejudicial and fundamentally flawed evidence of 'future dangerousness' at the penalty phase." Fourth Amended Petition, p. 284; *see also id.* at pp. 284-302.

Petrocelli argues that, in view of developments in the law "since the time of Mr. Petrocelli's appeal and initial habeas applications," there is good cause for his failure to exhaust this claim. Motion for Stay, p. 20; *see also* Reply in Support of Motion for Stay (docket #217), p. 30. Petrocelli cites the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), as the critical subsequent legal development. *See* Motion for Stay, p. 20.

However, the *Daubert* case was decided in 1993, more than ten years before Petrocelli filed his third state-court petition for writ of habeas corpus. *See* Exhibit 26. *Daubert* was on the books when that third round of state post-conviction litigation was conducted, and there is no reason presented by Petrocelli to explain why the claim in Ground 17 were not raised in that petition. Petrocelli has not shown good cause for his failure to exhaust the claim in Ground 17.

Ground 18

In Ground 18, Petrocelli claims that his constitutional rights were violated "due to the failure of the trial court to provide his jury with a Unanimity Instruction." Fourth Amended Petition, p. 303; *see also id.* at pp. 303-06.

As the court understands Petrocelli's argument, his only theory that there was good cause for his failure to exhaust this claim in state court is that the claim "is based on fundamental due process concerns that should have been raised by trial and appellate counsel but, through no fault of Petitioner, were not." Motion for Stay, p. 21; *see also* Reply in Support of Motion for Stay, pp. 30-31. This is not a showing of good cause. *See* discussion of Ground 8(b), *supra*.

Ground 19

In Ground 19, Petrocelli claims that his constitutional rights were violated "because the jury instructions did not properly instruct the jury on the limited use of prior bad act evidence in the penalty

1   phase and did not protect against the arbitrary and capricious infliction of the death penalty." Fourth

2   Amended Petition, p. 307; *see also id.* at pp. 307-11.

3         Pointing to *Middleton v. State*, 114 Nev. 1089, 968 P.2d 296 (1998), *Hollaway v. State*, 116 Nev.

4   732, 6 P.3d 987 (2000), and *Evans v. State*, 117 Nev. 609, 28 P.3d 498 (2001), Petrocelli argues that this

5   claim is "largely based on law that has changed since the direct appeal and may well apply retroactively

6   to Mr. Petrocelli's case." Motion for Stay, p. 22. *Middleton, Hollaway,* and *Evans,* however, were all

7   decided well before Petrocelli litigated his third state habeas action. The petition in Petrocelli's third

8   state habeas action was filed August 11, 2003. *See* Exhibit 26. Petrocelli makes no showing of good

9   cause for his failure to raise this claim in that proceeding.

10         Ground 20

11         In Ground 20, Petrocelli claims that his constitutional rights were violated "due to the admission

12   of cumulative and prejudicial victim impact testimony at the guilt and penalty phases of his trial."

13   Fourth Amended Petition, p. 312; *see also id.* at pp. 312-14.

14         Petrocelli argues that "[t]here is good cause to allow this claim to be exhausted as it is largely

15   based on *Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597 (1991), which the state courts did not have

16   an opportunity to rule on at the time of Petitioner's appeal." Motion for Stay, p. 23; *see also* Reply in

17   Support of Motion for Stay, p. 32. *Payne*, though, was decided some 12 years before Petrocelli initiated

18   his third state habeas action. *See* Exhibit 26. In addition, *Payne* was decided while Petrocelli's second

19   state habeas action was still pending in the state district court. *See* Exhibits PP and UU. The timing

20   of the *Payne* decision does not establish good cause for Petrocelli's failure to exhaust the claim in

21   Ground 20. Petrocelli also argues that his counsel were ineffective for failing to raise this claim on

22   appeal or in his state habeas actions. However, as is discussed above, in this court's view, such an

23   assertion of attorney incompetence in failing to raise the claim in state court, without more, does not

24   show good cause under *Rhines*. *See* discussion of Ground 8(b), *supra*.

25

26

Ground 21

In Ground 21, Petrocelli claims that his constitutional rights were violated "because he was deprived of the adequate assistance of an institutionalization expert." Fourth Amended Petition, p. 315; *see also id.* at pp. 315-18. Petrocelli claims that his trial counsel were ineffective, in violation of his constitutional rights, for failing to obtain the services of, and present the testimony of, such an expert. *See id.* at 315-18.

Petrocelli argues, in his Motion for Stay, that there is good cause for his failure to exhaust this claim in state court, because "[t]he main body of research upon which it is based is of relatively recent origin." Motion for Stay, p. 24. Petrocelli lists the following literature as representing that "body of research" upon which the claim in Ground 21 is based: DeLisi and Conis (eds.), *Violent Offenders: Theory, Research, Public Policy, and Practice* (Boston, 2008) at 237-53; Goldstein, (ed.), *Forensic Psychology* (vol. 11 of 12); Weiner (ed.), *Handbook of Psychology* (New York, 2003); Cunningham, Reidy and Sorensen, "Assertions of 'Future Dangerousness' at Federal Capital Sentencing: Rates and Correlates of Subsequent Prison Misconduct and Violence, *Law and Human Behavior* (Sept. 2007); and Cunningham and Sorensen, Predictive Factors for Violent Misconduct in Close Custody, *Prison Journal* 87, 241-53 (2007). *Id.* at 24. Petrocelli states: "While effective counsel would have presented expert testimony from an institutionalization expert to rebut the State's evidentiary presentation of future dangerousness in the penalty phase, there have been many advances in the literature since then." *Id.* at 24-25.

The claim in Ground 21 is a claim of ineffective assistance of trial counsel. As is discussed, above, with regard to Ground 7(e), the analysis of a claim of ineffective assistance of counsel looks at whether counsel's performance was reasonably competent in light of prevailing professional norms *at the time. See Strickland*, 466 U.S. at 688-89; *see also Bobby v. Van Hook*, --- U.S. ----, 130 S.Ct. 13, 16-17, 175 L.Ed.2d 255 (2009). Because, under *Strickland*, the analysis of counsel's performance is conducted from the perspective of the time of the trial, subsequent advances in the literature have no

18

1  bearing on the issue of ineffective assistance of counsel, and certainly do not show good cause for

2  Petrocelli's failure to exhaust this claim.

3       Petrocelli also argues, in the same generic manner found throughout his motion for stay, that his

4  counsel were ineffective for failing to exhaust this claim.  This bald assertion, however, does not

5  establish good cause, within the meaning of the *Rhines* decision.  *See* discussion of Ground 8(b), *supra*.

6       Ground 22

7       In Ground 22, Petrocelli claims that his constitutional rights were violated "because Mr.

8  Petrocelli's capital trial, sentencing, and review on direct appeal were conducted before state judicial

9  officers whose tenure in office was not during good behavior but whose tenure was dependent on

10  popular election." Fourth Amended Petition, p. 319; *see also id.* at pp. 319-21.

11       Petrocelli argues that his appellate and state post-conviction counsel were ineffective for failing

12  to exhaust this issue in the state courts.  *See* Motion for Stay, p. 25.  The court does not accept such a

13  bald claim of ineffective assistance of counsel, without more, as satisfaction of the good-cause

14  requirement imposed by *Rhines*.  *See* discussion of Ground 8(b), *supra*.

15       Ground 23

16       In Ground 23, Petrocelli claims that his constitutional rights were violated "because execution

17  by lethal injection violates the constitutional prohibition against cruel and unusual punishments."

18  Fourth Amended Petition, p. 322; *see also id.* at pp. 322-30.

19       With respect to this claim, Petrocelli's entire argument, in his motion for stay, is as follows:

20            The court has ruled that this claim is unexhausted.  However, good cause
        exists to allow Petitioner to return to state courts to exhaust this claim.  Much of the
21       information upon which this claim is based is quite new.  *See* Exhibits 142-146.  At
        the time of Petitioner's appeal or state habeas actions, much of the background on the
22       Nevada lethal injection protocol was still not public knowledge, so there would have
        been no feasible way for it to have been successfully raised previously.  This
23       probably accounts for the fact that the claim was not presented to the Nevada
        Supreme Court in the last round of state habeas proceedings.  Petitioner should be
24       allowed to exhaust this claim in the state courts.

25  Motion for Stay, pp. 25-26 (citation to order entered March 23, 2010 (docket #200) omitted).

26

19

1       Exhibit 142 is a copy of the Nevada Department of Corrections' "Confidential Execution

2   Manual," as revised in February 2004. Exhibit 143 is a copy of an amicus brief filed in the United

3   States Supreme Court in a case out of the Eleventh Circuit Court of Appeals entitled *Nelson v.*

4   *Campbell*. Exhibit 144 is a copy of a Las Vegas Sun article, from March 18, 2004, entitled "Killer

5   Makes Final Requests," regarding the then-imminent execution of Lawrence Colwell. Exhibit 145 is

6   a copy of an article from a medical journal, The Lancet, entitled "Inadequate Anaesthesia in Lethal

7   Injection for Execution," dated April 16, 2005. And, Exhibit 146 is a declaration of Mark J. S. Heath,

8   M.D., apparently produced for use in the case of *Beets v. McDaniel*, 2:04-cv-0085-KJD-GWF, and

9   signed by Dr. Heath on May 16, 2006.

10      Petrocelli does not describe what efforts he made, while in state court, to obtain the Nevada

11  Department of Corrections' execution manual, in order to support his state court litigation of the claim

12  in Ground 23; nor does Petrocelli explain why that document could not have been obtained by means

13  of a subpoena or other legal process in state court. Petrocelli does not explain the significance of the

14  amicus brief from the *Nelson* case, with respect to his claimed ability to exhaust the claim he sets forth

15  in Ground 23. Similarly, with respect to the March 18, 2004, Las Vegas Sun article and the April 16,

16  2005, Lancet article, Petrocelli does not identify what information in those articles he claims was

17  necessary to his ability to exhaust his claim. Finally, Petrocelli does not describe the circumstances of

18  the production of the Heath declaration, he does not explain why that declaration, or one similar to it,

19  could not have been obtained earlier, and he does not provide any explanation why the information in

20  that declaration was necessary to his exhaustion of his claim.

21      The record shows that Petrocelli was able to, and in fact did, articulate his Ground 23 claim in

22  state court in 2003 when he initiated his third state habeas action. *See* Exhibit 26, pp. 34-38. However,

23  Petrocelli abandoned that claim on appeal, and, therefore, did not exhaust it. *See* Exhibits 38 and 40.

24  Petrocelli has made no showing of good cause for his abandonment of the claim on the appeal in his

25  third state habeas action, or for his failure to exhaust the claim in general.

26

20

Ground 24

In Ground 24, Petrocelli claims that his constitutional rights were violated "due to the failure of the Nevada Supreme Court to conduct fair and adequate appellate review." Fourth Amended Petition, p. 331; *see also id.* at pp. 331-33.

In his motion for stay, Petrocelli argues that there is good cause for his failure to exhaust this claim in state court, on his direct appeal, "as it could not have been brought earlier on appeal, as it is based on the deficiencies of the direct appeal opinion." Motion for Stay, p. 26. This argument, of course, does not address the real question, which is: why was this claim not raised in any of Petrocelli's three state habeas actions? After respondents posed that question in their response to the motion for stay (*see* Opposition to Motion for Stay, p. 60), Petrocelli argued, in his reply: "As to why it was not presented in state post-conviction proceedings, Petitioner has claimed that it is due to ineffective post-conviction counsel." Reply in Support of Motion for Stay, p. 35. Petrocelli provides no further argument about, or any substantiation of, such a claim of ineffective assistance of post-conviction counsel. Such a bald claim of ineffective assistance of counsel, without more, does not satisfy the good-cause prong of the *Rhines* standards. *See* discussion of Ground 8(b), *supra*.

Ground 25

In Ground 25, Petrocelli claims that his constitutional rights were violated "by the failure to submit all of the elements of capital eligibility to the grand jury or to the court for a probable cause determination." Fourth Amended Petition, p. 334; *see also id.* at pp. 334-35.

In his motion for stay, Petrocelli asserts that this claim has merit (albeit without any citation to any controlling legal authority), and then Petrocelli goes to state, without explanation: "The failure to raise this claim earlier was not Petitioner's fault." Motion for Stay, p. 27. In his reply, Petrocelli asserts that ineffective assistance of his post-conviction counsel is good cause for his failure to exhaust the claim. *See* Reply in Support of Motion for Stay, pp. 35-36.

1       As is discussed above, the court does not accept such a claim of ineffective assistance of counsel,

2   without more, as satisfaction of the good-cause requirement imposed by *Rhines*. *See* discussion of

3   Ground 8(b), *supra*.

4       Ground 26

5       In Ground 26, Petrocelli claims that his constitutional rights were violated "because the death

6   penalty is cruel and unusual punishment in all circumstances." Fourth Amended Petition, p. 336; *see*

7   *also id.* at pp. 336-37.

8       This general challenge to the death penalty conflicts with the holding of the United States

9   Supreme Court in *Baze v. Rees*, 553 U.S. 35 (2008). In that case, the Court ruled that execution by

10  lethal injection, as carried out in Kentucky, was constitutional. It appears the *Baze* holding forecloses

11  Petrocelli's argument that the death penalty, no matter how administered, is necessarily unconstitutional.

12  Petrocelli does not explain how his claim in Ground 26 could have any possible merit in light of *Baze*.

13      Furthermore, Petrocelli does not show good cause for his failure to exhaust this claim in state

14  court. Petrocelli actually asserted this claim in the state district court in his third state habeas action (*see*

15  Exhibit 26, pp. 28-29), but he did not raise the issue before the Nevada Supreme Court on the appeal

16  in that action. *See* Exhibits 38 and 40.

17      Petrocelli argues:

18      Petitioner requests that he be allowed to exhaust this claim in the state courts. There
        is "good cause" for this request because Mr. Petrocelli asserts that under modern,
19      evolving standards of decency, it is cruel and unusual punishment for the government
        to kill its own citizens. As these standards have evolved since Petitioner was last in
20      state court, those courts should be afforded an opportunity to rule on this claim.

21  Motion for Stay, p. 27. Petrocelli offers no explanation how "standards of decency" have evolved since

22  he litigated his third state habeas action.

23      Petrocelli also asserts, with respect to this claim, his generic argument that there is good cause

24  for his failure to exhaust this claim because of ineffectiveness of his counsel in failing to raise it on

25  direct appeal or on the appeal in any of his three state habeas actions. *See* Motion for Stay, pp. 27-28.

26

1  Petrocelli's bald claim of ineffective assistance of counsel, without more, does not establish good cause

2  for his failure to exhaust this claim. *See* discussion of Ground 8(b), *supra*.

3      Ground 27

4      In Ground 27, Petrocelli claims that his "conviction and sentence are invalid pursuant to the

5  rights and protections afforded him under the International Covenant on Civil and Political Rights."

6  Fourth Amended Petition, p. 338; *see also id.* at pp. 338-39.

7      Here again, Petrocelli made the claim in Ground 27 before the state district court in his third

8  state habeas action (*see* Exhibit 26, pp. 40-41), but he did not raise the issue before the Nevada Supreme

9  Court on the appeal in that action. *See* Exhibits 38 and 40.

10     Petrocelli argues that there is good cause for his failure to exhaust this claim "because

11 international law is increasingly being considered by various courts in their rulings." Motion for Stay,

12 p. 28. Petrocelli offers no further explanation or support for that argument. It is not a showing of good

13 cause for his failure to exhaust the claim.

14     Furthermore, Petrocelli's claim of ineffective assistance of counsel, for not raising this claim on

15 direct appeal or on the appeal in any of his state habeas actions, without more, does not establish good

16 cause for his failure to exhaust this claim. *See* discussion of Ground 8(b), *supra*.

17     Ground 28

18     In Ground 28, Petrocelli claims that his death sentence is unconstitutional "because of the risk

19 that the irreparable punishment of execution will be applied to innocent persons." Fourth Amended

20 Petition, p. 340; *see also id.* at pp. 340-42.

21     Petrocelli argues that there is good cause for his failure to exhaust this claim, as follows:

22     There is "good cause" for this request [to be allowed to exhaust this claim in the state
       courts] as through no fault of Petitioner this claim was never previously presented in
23     state court. Additionally, since his last round of state habeas proceedings, the factual
       basis of the claim has shifted in Petitioner's favor due to widespread publicity
24     regarding the possible execution of innocent persons. An example would be the
       widespread controversy regarding the Todd Willingham case in Texas.

25

26

23

1    Motion for Stay, pp. 28-29.  There is no further explanation or support for this argument.  The allegation

2    that there was not as much "publicity regarding the possible execution of innocent persons" when

3    Petrocelli litigated his direct appeal and his three state habeas actions, as there is now, does not amount

4    to a showing of good cause for Petrocelli's failure to exhaust.

5           Furthermore, Petrocelli's claim of ineffective assistance of counsel, for not raising this claim on

6    direct appeal or on the appeal in any of his state habeas actions, without more, does not establish good

7    cause for his failure to exhaust this claim.  *See* discussion of Ground 8(b), *supra*.

8           <u>Ground 29</u>

9           In Ground 29, Petrocelli claims that his constitutional rights have been violated because "[t]he

10   execution of a death sentence after keeping the condemned on death row for an inordinate amount of

11   time constitutes cruel and unusual punishment."  Fourth Amended Petition, p. 343; *see also id.* at pp.

12   343-53.

13          With respect to the question of good cause for his failure to exhaust this claim, Petrocelli argues:

14          There is "good cause" for this request [to be allowed to exhaust this claim in the state
             courts] as through no fault of Petitioner, the state courts have never had the
15          opportunity to rule on it.  The circumstances of the claim have changed since Mr.
             Petrocelli was last in state court, as several additional years have been added to his
16          confinement, through no choice of his own.  Additionally, to the extent that appellate
             counsel and state post-conviction counsel failed to raise this issue on direct appeal,
17          their defective assistance deprived Mr. Petrocelli of his state and federal due process
             and equal protection right to effective assistance of counsel on appeal and in post-
18          conviction, as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to
             the Constitution.
19

20   Motion for Stay, p. 29.

21          The fact that Petrocelli has been confined for "several additional years" – about four years,

22   actually – since he litigated his last state habeas action, does not establish good cause for his failure to

23   exhaust this claim in that state habeas action.

24          Moreover, Petrocelli's claim of ineffective assistance of counsel, for not raising this claim in any

25   of his state habeas actions, without more, does not establish good cause for his failure to exhaust this

26   claim.  *See* discussion of Ground 8(b), *supra*.

24

Ground 30

In Ground 30, Petrocelli claims that his constitutional rights have been violated "due to the cumulative errors in the admission of evidence and instructions, gross misconduct by State officials and witnesses, and the systematic deprivation of Mr. Petrocelli's right to the effective assistance of counsel." Fourth Amended Petition, p. 354; *see also id.* at pp. 354-56.

Petrocelli's only argument that there is good cause for his failure to exhaust this claim is his blanket ineffective assistance of counsel argument. As is discussed above, the court does not accept as good cause, under *Rhines*, Petrocelli's bald statement that his counsel were ineffective for not exhausting the claim. *See* discussion of Ground 8(b), *supra.*

Ground 31

Finally, in Ground 31 Petrocelli claims that his conviction and sentence are unconstitutional "because he may become incompetent to be executed." Fourth Amended Petition, p. 357.

It appears that Ground 31 does not, at least at this time, state a potentially meritorious claim. *See Martinez-Villareal v. Stewart,* 118 F.3d 628, 632-35 (9th Cir.1997), *affirmed sub nom. Stewart v. Martinez-Villareal,* 523 U.S. 637, 118 S.Ct. 1618 (1998). Moreover, in *Panetti v. Quarterman,* 551 U.S. 930 (2007), the Supreme Court held that it is unnecessary to raise an unripe claim of incompetency in an initial habeas petition in order to preserve the claim.

Regarding the question of good cause for his failure to exhaust this claim in state court, Petrocelli argues:

> There is "good cause" for this request [to be allowed to exhaust this claim in the state courts] as it appears that a claim anticipating incompetence to be executed should be raised in an initial petition for writ of habeas corpus. *Martinez-Villareal v. Stewart,* 118 F.3d 628 (9th Cir.1997), *affirmed sub nom. Stewart v. Martinez-Villareal,* 523 U.S. 637, 118 S.Ct. 1618 (1998). Mr. Petrocelli therefore requests that the state courts have an opportunity to first rule on this claim so that it may be preserved for federal habeas review.

Motion for Stay, pp. 30-31. But the *Martinez-Villareal* argument does not establish good cause for Petrocelli's failure to exhaust this claim in state court. Petrocelli could have exhausted this claim just

1  as well in his third state habeas action as he could now.  To the extent such a claim would have been

2  held to be premature in Petrocelli's third state habeas action, it would be now as well.

3  *Kelly*

4       Petrocelli requests a *Kelly* stay, in the alternative, in case a *Rhines* stay is not granted.  *See*

5  Motion for Stay, pp. 33-47.  The court will deny that request.

6       In *King v. Ryan*, 564 F.3d 1133 (9th Cir.2009), the court of appeals held that, in addition to the

7  stay procedure authorized in *Rhines*, district courts retain discretion to permit petitioners to follow the

8  three-step stay-and-abeyance procedure approved in *Calderon v. U.S. Dist. Ct. (Taylor)*, 134 F.3d 981,

9  986 (9th Cir.1998), and *Kelly v. Small*, 315 F.3d 1063 (9th Cir.2003).  Following that procedure

10  (sometimes referred to as the "*Kelly* procedure" or a "*Kelly* stay"):  (1) a petitioner amends his petition

11  to delete any unexhausted claims; (2) the district court stays and holds in abeyance the amended, fully

12  exhausted petition, allowing the petitioner the opportunity to proceed to state court to exhaust the

13  deleted claims; and (3) the petitioner later amends his petition again incorporating the newly-exhausted

14  claims.  *Kelly*, 315 F.3d at 1070-71.  The *Kelly* procedure has no requirement of a showing of good

15  cause for the petitioner's failure to exhaust.

16       However, compared to the *Rhines* procedure, the *Kelly* procedure has a significant drawback for

17  petitioners.  "Unlike the *Rhines* procedure, the *Kelly* procedure does nothing to protect a petitioner's

18  unexhausted claims from untimeliness in the interim."  *King*, 564 F.3d at 1141.

19       On April 24, 1996, the Antiterrorism and Effective Death Penalty Act (AEDPA) went into effect.

20  Pub.L. No. 104-132, 110 Stat. 1214-1226 (1996).  The AEDPA made various amendments to the

21  statutes controlling federal habeas corpus practice.  One of the amendments imposed a one-year statute

22  of limitations on the filing of federal habeas corpus petitions.  With respect to the statute of limitations,

23  the habeas corpus statute provides:

24       (d)(1) A 1-year period of limitation shall apply to an application for a
        writ of habeas corpus by a person in custody pursuant to the judgment
25       of a State court.  The limitation period shall run from the latest of –

26

26

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). The AEDPA limitations period is tolled while a "properly filed application" for post conviction or other collateral relief is pending before a state court. 28 U.S.C. § 2244(d)(2). The limitations period is not tolled, however, during the pendency of a federal habeas petition. *See Duncan v. Walker,* 533 U.S. 167 (2001).

Therefore, if the *Kelly* procedure is followed, in order to avoid a statute of limitations bar, the newly-exhausted claims, which are to be set forth in an amended petition after the stay is lifted, must relate back to claims in the fully-exhausted stayed petition. *See King,* 564 F.3d at 1142.

"An amendment of a pleading relates back to the date of the original pleading when ... the claim ... asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed.R.Civ.Pro. 15(c)(2). In *Mayle v. Felix,* 545 U.S. 644 (2005), the Supreme Court held that a petitioner may amend to add a new claim into a pending federal habeas petition after the expiration of the limitations period only if the new claim shares a "common core of operative facts" with the claims in the pending petition. *Mayle,* 545 U.S. at 659. An amended habeas petition, "does not relate back when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 649.

A district court exercises discretion in determining whether or not to grant a *Kelly* stay. *Kelly,* 315 F.3d at 1070. The court may properly refuse to stay an exhausted habeas petition when the statute

27

1    of limitations would prevent the petitioner from ever successfully amending to re-assert his claim. *See*

2    *King*, 564 F.3d. at 1141-42.

3       In this case, the one-year AEDPA limitations period ran out long ago. The record indicates that

4    there has been no post-conviction litigation, and, therefore, no statutory tolling of the limitations period,

5    since 2007, when the dismissal of Petrocelli's third state habeas action was affirmed on appeal. *See*

6    Exhibit 41. Therefore, a *Kelly* stay would benefit Petrocelli only to the extent that his newly-exhausted

7    claims – those to be added back into the federal petition following the requested stay – would relate back

8    to exhausted claims to be included in the stayed petition.

9       Petrocelli makes general arguments that the newly-exhausted claims would not be time-barred,

10   but he does not provide any specific analysis, in this regard, with respect to any particular claim. The

11   court, however, has examined the unexhausted claims in the fourth amended petition, which Petrocelli

12   would exhaust during a stay (Grounds 7(e), 8(b), 9, 11, 14, 15(a), 15(b), 15(c), 15(d), 15(e), 16(a), 16(b),

13   16(c), 16(d), 16(e), 16(f), 16(g), 16(h), 16(i), 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and

14   31), and has compared those claims to the exhausted claims in the fourth amended petition, which would

15   be pled in a stayed fifth amended petition, following the *Kelly* procedure (Grounds 6(c), 6(d), 7(b), 7(f),

16   10, 12, and 13). *See King*, 564 F.3d at 1142 ("[W]e hold that *Mayle* requires a comparison of a

17   petitioner's new claims to the properly exhausted claims left pending in federal court, not to any earlier

18   version of the complaint containing claims subsequently dismissed for failure to exhaust."). It appears

19   to the court that, of all Petrocelli's unexhausted claims, there may be colorable arguments that three of

20   those claims might relate back, under *Mayle*, to exhausted claims in Petrocelli's fourth amended petition.

21   Grounds 15(d) and 17 might arguably relate back to Ground 12, and Ground 19 might arguably relate

22   back to Ground 7(b). The court assumes, for purposes of this analysis only, and without finally deciding

23   the relation-back issue, that Grounds 15(d), 17, and 19 would relate back to exhausted claims, and could

24   therefore survive a statute of limitations challenge following a *Kelly* stay. There appears to be no

25   colorable argument that any of Grounds 7(e), 8(b), 9, 11, 14, 15(a), 15(b), 15(c), 15(e), 16(a), 16(b),

26

1   16(c), 16(d), 16(e), 16(f), 16(g), 16(h), 16(i), 18, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31 would

2   relate back to exhausted claims in the fourth amended petition.

3          Implementation of the *Kelly* procedure is a matter of this court's discretion. *See King*, 564 F.3d

4   at 1143. The court will exercise its discretion to deny Petrocelli a *Kelly* stay. The killing of James

5   Wilson, underlying this case, occurred on March 29, 1982, and Petrocelli was convicted in September

6   of that year – nearly three decades ago. In the time since his conviction, Petrocelli has litigated, in state

7   court, a direct appeal and three state habeas actions. The last of those state habeas actions was litigated

8   during a stay of this federal habeas case, between August 2003 and July 2007. In exercising its

9   discretion, the court is mindful of the important principles of comity and federalism. The State has a

10  strong interest in the finality of its criminal judgments, and execution of its capital sentences without

11  undue delay. The court is also mindful of the congressional intent behind AEDPA, the most recent

12  wide-ranging federal legislation in the habeas area, to "reduce delays in the execution of state and

13  federal criminal sentences, particularly in capital cases." *See Rhines*, 544 U.S. at 276. The court is also

14  cognizant, however, that, facing the ultimate punishment, capital habeas petitioners must be provided

15  reasonable opportunity to exhaust potentially meritorious habeas claims in state court, to avoid

16  unnecessary forfeiture of such claims. With these considerations in mind, and well-informed of the

17  procedural history of this case, this court cannot countenance another stay of this action to provide time

18  for yet another – it would be Petrocelli's fourth – state habeas action.[7] The court will deny Petrocelli's

19  motion for a stay, will require Petrocelli to abandon his unexhausted claims or face dismissal of his

20  entire fourth amended petition, and will move this action toward resolution of Petrocelli's viable claims,

21  on their merits.

22

23

24  ────────────────

25       [7] Respondents have made no showing that Petrocelli has ever engaged in dilatory litigation tactics, or that he has otherwise acted in bad faith in any manner in the state courts or in this court. And,

26  certainly, the court does not mean to suggest that any improper delay has been the fault of Petrocelli's current counsel, who became Petrocelli's counsel on September 27, 2007 (docket #140), after the conclusion of Petrocelli's last state habeas action.

1   **IT IS THEREFORE ORDERED** that petitioner's Motion for Leave to File Reply Brief Over

2   Twenty Pages in Length (docket #216) is **GRANTED**.  The reply in support of the motion for stay has

3   already been filed, and has been considered in this order; therefore, no further action on the part of the

4   Clerk is necessary in this regard.

5   **IT IS FURTHER ORDERED** that petitioner's Motion to Stay Proceedings and Hold Litigation

6   in Abeyance (docket #203) is **DENIED**.

7   **IT IS FURTHER ORDERED** that petitioner shall have **30 days** from the date of entry of this

8   order to file a notice of abandonment of unexhausted claims, abandoning the claims in his fourth

9   amended petition that have been held to be unexhausted in state court (Grounds 7(e), 8(b), 9, 11, 14,

10  15(a), 15(b), 15(c), 15(d), 15(e), 16(a), 16(b), 16(c), 16(d), 16(e), 16(f), 16(g), 16(h), 16(i), 17, 18, 19,

11  20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31).  If petitioner does not, within the time allowed,  file

12  a notice of abandonment of unexhausted claims, abandoning all of his unexhausted claims, petitioner's

13  Fourth Amended Petition (docket #162) will be dismissed, in its entirety, pursuant to *Rose v. Lundy*, 455

14  U.S. 509 (1982).

15  **IT IS FURTHER ORDERED** that, if petitioner files a notice of abandonment of unexhausted

16  claims, abandoning all of his unexhausted claims, within the time allowed, respondent shall thereafter

17  have **90 days** to file an answer, responding to the exhausted claims remaining in petitioner's fourth

18  amended petition (Grounds 6(c), 6(d), 7(b), 7(f), 10, 12, and 13).

19  **IT IS FURTHER ORDERED** that, in all other respects, the schedule for further proceedings

20  set forth in the order entered November 16, 2007 (docket #147) shall remain in force.

21

22  Dated this ___10th___ day of March, 2011.

23

24

25  _____
    UNITED STATES DISTRICT JUDGE

26

30